IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-0196 SOM |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION TO DISMISS INDICTMENT |
| vs. | ) | AND MOTION REQUESTING COURT TO |
| | ) | INVOKE ITS SUPERVISORY POWERS |
| TODD ANTHONY HERNANDEZ, | ) | TO SET ASIDE VERDICT AND |
| | ) | DISMISS THE INDICTMENT WITH |
| Defendant. | ) | PREJUDICE |
| _____ | ) | |

ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT AND MOTION
REQUESTING COURT TO INVOKE ITS SUPERVISORY POWERS TO SET ASIDE
VERDICT AND DISMISS THE INDICTMENT WITH PREJUDICE

I.      INTRODUCTION AND BACKGROUND.

On September 9, 2005, a jury found Defendant Todd
Anthony Hernandez ("Hernandez") guilty of (1) knowingly and
intentionally conspiring with Gordon Lee Cox II ("Cox") and
others to distribute and to possess with intent to distribute
crystal methamphetamine and (2) knowingly and intentionally
distributing crystal methamphetamine.  Verdict (9/9/2005) at 1-2.
Pamela O'Leary Tower ("Attorney Tower") represented Hernandez
during the trial.[1]  Tower Decl'n ¶ 1.

On May 6, 2007, Hernandez filed a motion to dismiss the
Indictment, arguing that his due process rights had been violated

_____

[1] Attorney Tower was retained by and represented Hernandez
"from July 11, 2005, to March 6, 2006."  Declaration of Pamela
O'Leary Tower (8/15/2007) ("Tower Decl'n") ¶ 1.  Hernandez was
later represented by a different attorney, who was drawn from the
court's Criminal Justice Act panel.  Still later, Hernandez
retained yet a different attorney, who ultimately completed the
sentencing phase of this case.

because the Government failed to present evidence to the Grand Jury through Lawrence Peralta ("Officer Peralta"), a member of the Honolulu Police Department and Drug Enforcement Agency Task Force, regarding Cox's credibility as a Government informant. Motion to Dismiss ("Motion") at 4-5.  Claiming the Government had elicited from Officer Peralta only "selective testimony which the government knew materially omitted material facts and false statements of [Cox]," Hernandez argues that the Indictment must now be dismissed under United States v. Basurto, 497 F.2d 781, 785-86 (9th Cir. 1974).  Id.

Hernandez filed various papers himself while represented by different attorneys.  The court cautioned Hernandez that he could not simultaneously represent himself and have counsel appear for him.

On June 14, 2007, Hernandez filed yet another motion asking the court to invoke its supervisory powers ("Supervisory Motion").  This motion, drafted by Hernandez himself, was adopted by his attorney.  On July 5, 2007, Hernandez's counsel filed a supplemental memorandum ("Supplemental Memorandum"), which attempts to clarify the Supervisory Motion.[2]  In the Supervisory Motion and the Supplemental Memorandum, Hernandez reasserts his

---

[2] Although Hernandez pledged at the time that he would file no further documents himself, he did indeed submit an additional declaration as the final hearing in the case was about to commence.  This court permitted the filing.

argument concerning Officer Peralta's testimony before the Grand Jury. Hernandez also argues that the Government committed misconduct when it did not give him <u>Brady</u> evidence, "quantified the analogy of reasonable doubt" during its closing argument, allegedly coached one of its trial witnesses, and failed to charge Cox with possessing firearms when he was arrested. Hernandez also claims that Attorney Tower was ineffective when she: (1) failed to move to dismiss the Indictment based on an alleged violation of the Speedy Trial Act, 18 U.S.C. § 3161; (2) failed to challenge the search of a mailed parcel and Hernandez's residence, as she withdrew a request for a <u>Franks</u> hearing and did not move to suppress evidence obtained from the searches; (3) stipulated to an incorrect spelling of a street name; (4) stipulated to the use of an allegedly altered telephone message; (5) failed to object to and inform the court of the Government's coaching of a witness; (6) failed to object to the trial schedule, which split Cox's testimony over two days and included a lengthy recess over the Labor Day weekend; and (7) failed to introduce a text message, mail receipt, and letter. The Government disputes each assertion made by Hernandez.

Hernandez informed the court through counsel that an evidentiary hearing was not being requested in connection with his sentencing.

3

Because Hernandez fails to establish that the facts allegedly omitted from the Grand Jury were material to the Indictment, the court denies Hernandez's motion to dismiss.  The court also rejects Hernandez's assertions regarding alleged Brady evidence, as he does not explain how that evidence is material.  With respect to the Government's closing argument, the court's curative instruction and the presumption that the jury followed that instruction preclude Hernandez's claim of misconduct.  The court is unpersuaded by his claims of misconduct regarding the Government's alleged coaching of a witness and its failure to charge Cox for possessing firearms, because Hernandez does not claim or show that he was thereby prejudiced.

The court is also unpersuaded that Attorney Tower was ineffective in defending Hernandez.  As no Speedy Trial Act violation occurred, Attorney Tower's decision not to file a motion to dismiss on that ground was proper.  Additionally, because Hernandez has no standing to challenge the search of the mailed parcel and because he could not make a "substantial preliminary showing" warranting a Franks hearing, Attorney Tower was not constitutionally ineffective for declining to challenge the affidavits supporting the warrants to search the parcel and Hernandez's residence.  The court also rejects Hernandez's remaining claims of ineffective assistance of counsel, as he does not explain how he was prejudiced by Attorney Tower's actions.

4

II.      <u>LEGAL STANDARD.</u>

Federal courts draw their power to dismiss indictments from two sources. <u>United States v. Isgro</u>, 974 F.2d 1091, 1094 (9th Cir. 1992). First, a "court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding." <u>Id.</u> "Constitutional error is found where the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice to the defendant." <u>Id.</u> (internal quotation marks omitted). "Constitutional error may also be found if the defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed." <u>Id.</u>

A court may also draw on its supervisory power to dismiss an indictment. <u>Id.</u> Before a court may invoke this power, it "must find that the defendant is prejudiced by the misconduct." <u>Id.</u> "Absent such prejudice--that is, absent 'grave' doubt that the decision to indict was free from the substantial influence of the misconduct--a dismissal is not warranted." <u>Id.</u> (internal citations omitted).

III.      ANALYSIS.

        A.   Government Misconduct.

        Hernandez asserts that the Government committed
misconduct when it elicited only "selective testimony" during
Grand Jury proceedings, did not give him Brady evidence,
discussed reasonable doubt during its closing argument, coached
one of its witnesses, and failed to charge Cox with possession of
firearms.  The court disagrees.

        1.   Perjury Before the Grand Jury.

        Hernandez argues that the Indictment must be dismissed
under Basurto, 497 F.2d at 785-86, because Officer Peralta
allegedly committed perjury by omitting facts that Hernandez
claims would have affected Cox's credibility.  Motion at 4-6.
The Government disputes Hernandez's claims, arguing that, even if
Officer Peralta's statements were false, the facts omitted by
Officer Peralta were "not material to the indictment."
Opposition to Motion to Dismiss ("Opp.") at 7.  The Government
also posits that, because the omitted facts go to Cox's
credibility, the Government was under no duty to present those
facts to the Grand Jury.  Opp. at 6.  The court agrees with the
Government.

        In Basurto, 497 F.2d at 785, the Ninth Circuit stated,
"We hold that the Due Process Clause of the Fifth Amendment is
violated when a defendant has to stand trial on an indictment

6

which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached."  The Ninth Circuit thereafter clarified <u>Basurto</u>'s requirement for materiality, stating: "<u>Basurto</u> does not lay down a per se rule that all perjury before a grand jury is fatal to the indictment.  The perjury must be material."  <u>United States v. Brown</u>, 562 F.2d 1144, 1149 (9th Cir. 1978); <u>see also</u> <u>United States v. Sitton</u>, 968 F.2d 947, 953-54 (9th Cir. 1992) ("Dismissal of the indictment is not appropriate 'when a witness' alleged perjury is not material to the defendant's indictment and instead affects only the witness' credibility.'").

Hernandez argues that Officer Peralta should have testified before the Grand Jury about the following:  (1) that Cox made inconsistent statements concerning the amount of methamphetamine that Hernandez allegedly supplied to him; (2) that law enforcement officers found methamphetamine and a handgun in Cox's car at the time of his arrest; (3) that the methamphetamine in Cox's possession when he was arrested "did not allegedly come from" Hernandez; (4) that officers found over $1,000,000 in cash, a shotgun, and drug paraphernalia at Cox's apartments and a warehouse; and (5) that Cox "was a three-time felony drug convict facing a mandatory life sentence for his new crimes."  Motion at 4-5.  Hernandez does not directly explain how

Officer Peralta's omission of facts regarding Cox constituted perjury, but instead contends that the omitted facts were material to the Indictment because they would have affected Cox's credibility.  Motion at 4-5; Reply at 2.

None of the omissions Hernandez identifies negates the charges against Hernandez.  The court therefore agrees that they were not material to the case.  At most, the matters could have affected Cox's credibility.  However, it is well settled that the Government "has no duty to present to the grand jury all matters bearing on the credibility of witnesses."  United States v. Al Mudarris, 695 F.2d 1182, 1185 (9th Cir. 1983); see also United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) (noting that the Government has "no obligation to disclose 'substantial exculpatory evidence' to a grand jury even if that evidence impeaches the credibility of a key witness" (internal citation omitted)).  Thus, the Government was under no duty to present evidence concerning Cox's credibility.  See Al Mudarris, 695 F.2d at 1185; accord United States v. Bucci, 839 F.2d 825, 831 (1st Cir. 1988) ("The government is not obligated to present evidence that impeaches the credibility of its own witnesses.").  Because Hernandez offers no other argument relating to the omitted facts, the court concludes that, with respect to this subject, Hernandez fails to establish "constitutional error that interferes with the grand jury's independence and the integrity of the grand jury

8

proceeding." <u>See</u> <u>Isgro</u>, 974 F.2d at 1094. Dismissal is not warranted based on the omissions.

      2.  <u>Brady Violation.</u>

Hernandez asserts that "the government withheld vital <u>Brady v. Maryland</u> evidence from me in that I am aware that at least six witnesses and former co-conspirators of Cox--Jerry Doran, Todd Sanobe, Neil Lida, Mary Straton, William Caminos and James Low--were investigated and reports written about their activities with Cox which have not been provided to me."[3] Supplemental Declaration of Todd Anthony Hernandez (7/5/2007) ("Hernandez (7/5/2007) Decl'n") ¶ 6; Supervisory Motion at 9-10; <u>see also</u> Hernandez (8/10/2007) Decl'n ¶ 5. Hernandez claims, "I believe these persons will testify and be useful material impeachment witnesses to show Cox was dealing with them and not me." Hernandez (7/5/2007) Decl'n ¶ 6. The Government points out that it informed Attorney Tower of individuals that Cox had obtained drugs from and that she cross-examined Cox about his various sources of drugs at trial. Opposition to Supervisory Motion and Supplemental Memorandum ("Supp. Opp.") at 22.

---

[3] At the hearing on this matter, Hernandez asserted that the Government also withheld from him a compact disc of "all phone call recordings." Supplemental Declaration of Todd Anthony Hernandez (8/10/2007) ("Hernandez (8/10/2007) Decl'n") ¶ 4(c). He now "demand[s] this C-D" so that he may compare the recordings on it to other recordings, <u>see</u> <u>id.</u>, but his attorney explained at the final hearing in this case that he had reviewed the compact disc himself and found no significant differences between the various recordings. Hernandez's request for the disc is denied.

"The government has an obligation under <u>Brady v.</u>
<u>Maryland</u> to provide exculpatory evidence to a criminal
defendant." <u>United States v. Blanco</u>, 392 F.3d 382, 387 (9th Cir.
2004). "To establish a <u>Brady</u> violation, the evidence must be
(1) favorable to the accused because it is either exculpatory or
impeachment material; (2) suppressed by the government, either
willfully or inadvertently; and (3) material or prejudicial."
<u>Id.</u> "Impeachment evidence is exculpatory evidence within the
meaning of <u>Brady</u>" and includes material that "bears on the
credibility of a significant witness in the case." <u>Id.</u>
"Impeachment evidence is favorable [<u>Brady</u>] material 'when the
reliability of the witness may be determinative of a criminal
defendant's guilt or innocence." <u>Id.</u> "However, a failure to
disclose <u>Brady</u> evidence 'is constitutional error only if the
information is material, that is, only if there is a reasonable
probability that the result of the proceeding would have been
different had the information been disclosed.'" <u>United States v.</u>
<u>Serv. Deli Inc.</u>, 151 F.3d 938, 943 (9th Cir. 1998).

Hernandez identifies as <u>Brady</u> material "reports written
about [Cox's alleged co-conspirators'] activities with Cox."
Hernandez (7/5/2007) Decl'n ¶ 6. Assuming that this evidence was
withheld by the Government, Hernandez must still establish that
it is "material or prejudicial." <u>See</u> <u>Blanco</u>, 392 F.3d at 387.
He argues that the reports would "show Cox was dealing with them
and not me." Hernandez (7/5/2007) Decl'n ¶ 6. Although the

10

reports implicated other persons, they do not negate any "dealing" between Cox and Hernandez.  Hernandez (7/5/2007) Decl'n ¶ 6.  At most, the reports would show that Cox was also purchasing methamphetamine from other individuals, a matter already established at trial.  Transcript of Proceedings ("Tr.") (9/1/2007) at 8-9, 38, 40, 97; Tr. (9/7/2007) at 30, 38-39, 43.  Because Hernandez fails to show "a reasonable probability that the result of the proceeding would have been different had the information been disclosed," the court concludes that no Brady violation occurred.  See Serv. Deli Inc., 151 F.3d at 943.

### 3.   Improper Closing Argument.

Hernandez argues that the Government committed misconduct when it "quantified the analogy of reasonable doubt" during its closing argument.  Supervisory Motion at 15.  He contends that the Government's closing argument created "a strong impression on the minds of the Jury in a prejudicial way."  Id. at 15-16.  The court disagrees.

In determining whether a prosecutor's comment affected the jury's verdict, "this court must look to the substance of the curative instruction and the closeness of the case."  See United States v. De Cruz, 82 F.3d 856, 862 (9th Cir. 1996) (citing United States v. Kerr, 981 F.2d 1050, 1053-54 (9th Cir. 1992)).  "When the court . . . gives such an instruction, there is a strong presumption that the jury has followed the court's

instruction." <u>United States v. Pavon</u>, 561 F.2d 799, 803 (9th Cir. 1977); <u>see also</u> <u>United States v. Endicott</u>, 803 F.2d 506, 513 (9th Cir. 1986) ("A trial judge may cure the effect of improper prosecutorial comments 'by admonishing counsel to refrain from such remarks or by giving appropriate curative instructions to the jury.'").

Before the Government presented its closing argument, the court instructed the jury in relevant part as follows:

> You must follow all of my instructions
> as a whole.  You have no right to disregard
> or give special attention to any one
> instruction . . . .
>
> . . . .
>
> . . . .  The government has the burden
> of proving every element of the charge beyond
> a reasonable doubt.  If it fails to do so,
> you must return a verdict of not guilty.
>
> Proof beyond a reasonable doubt is proof
> that leaves you firmly convinced that the
> defendant is guilty.  It is not required that
> the government prove guilt beyond all
> possible doubt.
>
> A reasonable doubt is a doubt based upon
> reason and common sense and is not based
> purely on speculation.  It may arise from a
> careful and impartial consideration of all
> the evidence, or from lack of evidence.
>
> If after a careful and impartial
> consideration of all the evidence, you are
> not convinced beyond a reasonable doubt that
> the defendant is guilty, it is your duty to
> find the defendant not guilty.  On the other
> hand, if after a careful and impartial
> consideration of all the evidence, you are
> convinced beyond a reasonable doubt that the

> defendant is guilty, it is your duty to find
> the defendant guilty.
>
>      . . . .
>
>      As stated earlier, it is your duty to
> determine the facts, and, in so doing, you
> must consider only the evidence I have
> admitted in the case.  The term "evidence"
> includes (1) the sworn testimony of the
> witnesses, (2) the exhibits admitted in the
> record, and (3) any facts or testimony to
> which the parties have agreed and stipulated.
>
>      Remember that any statements,
> objections, or arguments made by the lawyers
> are not evidence in the case . . . .
>
>      In the final analysis, however, it is
> your own recollection and interpretation of
> the evidence that controls the case.  What
> the lawyers say is not binding upon you.

Tr. (9/8/2005) at 14-16; Jury Instructions (9/8/2005) at 2-3, 5.

After the court instructed the jury, the Government

began its closing argument by discussing the reasonable doubt

standard as follows:

> The court has instructed you on
> reasonable doubt.  I only add a couple things
> on that.  Reasonable doubt does not mean
> beyond any doubt whatsoever.
>
> What we're really talking about here on
> reasonable doubt is that you are to apply
> that level of judgment which you are called
> upon to do many times in your own lives as to
> your most important decisions--such as,
> should I change my job, should I retire,
> should I move away from my home here in
> Hawaii, what school should my children go
> [t]o--those kinds of really, really important
> decisions in your own life, and you are being
> asked here to apply that same level of
> judgment that you would bring to your own

important decisions in your day-to-day
affairs.

Tr. (9/8/2005) at 29-30.  Attorney Tower objected to the

foregoing statements after the Government completed its closing

argument, asserting that "the whole question of what you do in

your private life has nothing to do with how you make your

determinations of guilt or innocence in a court of law."  Id.

at 70.

Attorney Tower produced no legal authority establishing

that the Government's statements constituted error, although the

court twice gave her the opportunity to research the issue.  This

was not necessarily because of any failing in her research, as

Hernandez to date has not provided any such authority.  The court

overruled the objection, id. at 87, but nevertheless read the

following curative instruction to the jury:

> The court is concerned that the
> prosecutor's analogy in his closing argument
> comparing the standard of proof beyond a
> reasonable doubt to the level of evidence on
> which a person would be willing to rely to
> make the most important decisions in his or
> her own life is not entirely accurate in all
> circumstances.  This is because many of the
> important decisions in one's life may involve
> accepting a heavy element of uncertainty and
> the willingness to take risks, which are
> wholly unlike the decisions jurors ought to
> make in criminal cases.  For this reason, I
> instruct you to disregard that analogy, and I
> reinstruct you on the definition of
> reasonable doubt as follows:
>
> Proof beyond a reasonable doubt is proof
> that leaves you firmly convinced that the

14

> defendant is guilty.  It is not required that
> the government prove guilt beyond all
> possible doubt.  A reasonable doubt is a
> doubt based upon reason and common sense and
> is not based purely on speculation.  It may
> arise from a careful and impartial
> consideration of all the evidence or from
> lack of evidence.  If, after a careful and
> impartial consideration of all the evidence,
> you are not convinced beyond a reasonable
> doubt that the defendant is guilty, it is
> your duty to find the defendant not guilty.
> On the other hand, if, after a careful and
> impartial consideration of all the evidence,
> you are convinced beyond a reasonable doubt
> that the defendant is guilty, it is your duty
> to find the defendant guilty.

Tr. (9/8/2005) at 93-94.

In sum, the court instructed the jury on reasonable doubt both before and after the Government's closing argument. Even though the court overruled Attorney Tower's objection to the closing argument, the court's curative instruction clearly stated that the Government's analogy "is not entirely accurate."  Id. at 93.  "[T]here is a strong presumption that the jury has followed the court's instruction."  Pavon, 561 F.2d at 803.  This was not a close case on this issue.  See De Cruz, 82 F.3d at 861, 863 ("this does not appear to have been a close case, and defendant does not even argue that it was").  The court therefore concludes that the Government's alleged misconduct during closing argument did not affect the jury's ability to judge the evidence fairly or the jury's verdict.  See id. at 862.

4.    Other Allegations of Government Misconduct.

Hernandez also argues that the Indictment should be dismissed because the Government committed misconduct by allegedly coaching one of its witnesses during trial and by failing to charge Cox with possessing firearms.  Supervisory Motion at 11-13; Supplemental Memo. at 2.  Hernandez does not allege how he was prejudiced by these actions.  In the Ninth Circuit, "To justify [dismissal of an indictment], the government's conduct must have caused substantial prejudice to the defendant" and must have "had at least some impact on the verdict."  United States v. Lopez, 4 F.3d 1455, 1464 (9th Cir. 1993); see also United States v. Marshank, 777 F. Supp. 1507, 1530 (N.D. Cal. 1991) ("To warrant dismissal, the government's misconduct must not only be flagrant, but must also have prejudiced the defendant.").  Having made no showing at all of prejudice with respect to the alleged matters, Hernandez is not entitled to dismissal of the Indictment.  See Lopez, 4 F.3d at 1464.

The court further questions how Hernandez could have observed any alleged coaching, given the layout of the courtroom and Hernandez's seating position during trial.

B.    Ineffective Assistance of Counsel.

Hernandez argues that Attorney Tower was ineffective when she:  (1) failed to move to dismiss the Indictment based on

an alleged violation of the Speedy Trial Act; (2) improperly withdrew a request for a <u>Franks</u> hearing and did not move to suppress certain evidence; (3) stipulated to an incorrect spelling of a street name; (4) stipulated to the use of an allegedly altered telephone message; (5) failed to object to and inform the court of the Government's alleged coaching of a witness; (6) failed to object to the trial schedule; and (7) failed to introduce certain evidence.  Hernandez does not establish that Attorney Tower was ineffective in these ways.

To succeed on a claim of ineffective assistance of counsel, a defendant must demonstrate (1) that counsel's performance and assistance was deficient, or "fell below an objective standard of reasonableness" of "prevailing professional norms," and (2) that counsel's performance prejudiced petitioner's defense.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).  Counsel's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  <u>Id.</u> at 687.  In determining whether counsel's performance is constitutionally deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  <u>Id.</u> at 689.  "In evaluating the reasonableness of counsel's actions, a reviewing court must consider the circumstances at the time of counsel's conduct, and

cannot 'second-guess' counsel's decisions or view them under the 'fabled twenty-twenty vision of hindsight.'" Edwards v. Lamarque, 475 F.3d 1121, 1127 (9th Cir. 2007) (citing Strickland, 466 U.S. at 690). To demonstrate prejudice, a petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. If either prong of this test is not satisfied, the court must find that counsel's performance was constitutionally effective. See id. at 696.

      1.   Speedy Trial Act Violation.

Hernandez first argues that Attorney Tower was ineffective when she "failed to move to dismiss the indictment based on a violation of the Speedy Trial Act." Supplemental Memo. at 4; Supervisory Motion at 7. Hernandez contends that the Speedy Trial Act was violated because 110 days elapsed "between the date [he] made his appearance before a judicial officer in the Central District and trial." Supplemental Memo. at 6. The Government disputes that the Speedy Trial Act was violated. Supp. Opp. at 1-2. The Government is correct.

"Under the Speedy Trial Act, a defendant who pleads not guilty must be tried 'within seventy days from the filing date of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.'" United States

v. Wickham, 30 F.3d 1252, 1253–54 (9th Cir. 1994) (citing 18 U.S.C. § 3161(c)(1)).  Even if a defendant first appears in another district where he was apprehended, the speedy trial clock does not begin to run until the defendant appears in the district in which the information or indictment was filed.  See, e.g., United States v. Wilson, 720 F.2d 608, 609 (9th Cir. 1983); see also Wickham, 30 F.3d at 1254.

It is undisputed that, for purposes of the Speedy Trial Act, the charges against Hernandez were pending in the District of Hawaii, not in the Central District of California.  Although Hernandez was arrested and first appeared in the Central District of California, the seventy days did not begin to run at that time.  It is also undisputed that Hernandez "appeared before a judicial officer" of the District of Hawaii after he was indicted.  18 U.S.C. § 3161(c)(1).  The seventy days began to run when Hernandez first appeared in this District on June 29, 2005, at which time he entered a not guilty plea.  See 18 U.S.C. § 3161(c)(1); see also Wickham, 30 F.3d at 1254; Wilson, 720 F.2d at 609.  Because Hernandez was tried on August 30, 2005, well within seventy days from June 29, 2005, Hernandez's right to a speedy trial was not violated.  See 18 U.S.C. § 3161(c)(1).  Attorney Tower's decision not to file a motion to dismiss based on a violation of the Speedy Trial Act was correct and fully

warranted.  She was not ineffective in this regard.  <u>See</u>
<u>Strickland</u>, 466 U.S. at 687–88.

        2.    <u>Franks Hearing and Motion to Suppress.</u>

      Hernandez contends that Attorney Tower was ineffective
when she failed to challenge the affidavits supporting the
warrants to search the mailed parcel and his residence.
Supervisory Motion at 4, 7; Supplemental Memo. at 10–15.
Specifically, Hernandez asserts that Attorney Tower should have
requested a <u>Franks</u> hearing to obtain information that could be
used to suppress the evidence discovered during the search of the
mailed parcel and of his residence, arguing that the affidavit
contained false statements that "would have caused the magistrate
to deny the warrants issuance."  Supplemental Memo. at 12–13.
Attorney Tower was not ineffective in this regard.

        a.    <u>The Parcel.</u>

      Regarding the search of the mailed parcel, Hernandez
says, "If the motion to suppress were granted, the 13 pounds of
methamphetamine would have been excluded which would have been a
material and substantial change in the government's evidence,
effectively negating its case."  Supplemental Memo. at 12.  In
response, the Government maintains that Hernandez has no standing
to challenge the search of the parcel, as Hernandez "was neither
the named sender or recipient on the subject parcel, nor did he
take any other steps to identify his ownership or other privacy

interest in the parcel and its contents." Supp. Opp. at 9.  The
court agrees with the Government that Hernandez has no standing
under the Fourth Amendment to challenge the search of the parcel.

"To contest the legality of a search under the fourth
amendment, the defendant must demonstrate a legitimate
expectation of privacy in the place or item searched by showing
an actual subjective expectation of privacy which society is
prepared to recognize."  United States v. Davis, 932 F.2d 752,
756 (9th Cir. 1991).  "The defendant has the burden of
establishing, under the totality of the circumstances, the search
or seizure violated his legitimate expectation of privacy in a
particular place."  Id.

The Ninth Circuit examines "various factors in
determining whether [a] defendant may assert a legitimate
expectation of privacy in a given space or item."  United States
v. Broadhurst, 805 F.2d 849, 851 (9th Cir. 1986).  These factors
include the "defendant's possessory interest in the thing
searched or seized, measures taken by the defendant to insure
privacy, and whether the container from which contraband is
seized demonstrates a privacy interest in the contents."  Id. at
851 n.2.

"Both the sender and the addressee have privacy
interests in mailed packages."  United States v. Sheldon, 351 F.
Supp. 2d 1040, 1043 (D. Haw. 2004) (citing United States v.

21

Hernandez, 313 F.3d 1206, 1209 (9th Cir. 2002)).  "Generally, a

third party who is neither the sender nor the addressee of a

mailed package does not share this privacy interest."  Id.

(citing United States v. Pierce, 959 F.2d 1297, 1303, (5th Cir.

1992) ("Arguably, a defendant who is neither the sender nor the

addressee of a package has no privacy interest in it, and,

accordingly, no standing to assert Fourth Amendment objections to

its search."); United States v. Koenig, 856 F.32d 843, 846

(7th Cir. 1988); United States v. Givens, 733 F.2d 339, 341-42

(4th Cir. 1984)).  However, a defendant who is neither the sender

nor addressee of a mailed package, but claims an ownership

interest in the package, exercises control over the package, and

takes measures to reinforce his or her privacy interest in the

package may have a legitimate expectation in that package.  See

Sheldon, 351 F. Supp. 2d at 1044 ("Sheldon demonstrates that she

owned the Airborne Express parcel and exercised control over it

upon delivery.  She also took measures to reinforce her privacy

interest after taking delivery of the parcel.").

        Hernandez was neither the sender nor addressee of the

parcel that he claims should have been suppressed.  He does not

claim to have had an ownership interest in the parcel, to have

exercised control over the parcel, or to have taken any measures

to reinforce a privacy interest in the parcel.  Without claiming

any interest in the parcel, Hernandez fails to "demonstrate a

legitimate expectation of privacy in the . . . item searched."
See Davis, 932 F.2d at 756.  Hernandez therefore lacks standing
to challenge the search of the parcel and its contents.  See
Sheldon, 351 F. Supp. 2d at 1043.  Because Hernandez lacks
standing to raise such issues, Attorney Tower acted prudently in
withdrawing her request for a Franks hearing regarding the parcel
and in declining to bring a motion to suppress the parcel and its
contents.

        b.   Hernandez's Residence.

       Hernandez also argues that the affidavit supporting the
search of his residence incorrectly stated that "Cox dealt 'only
with defendant.'"  Supplemental Memo. at 15.  According to
Hernandez, this statement "is untrue as [Officer Peralta] was
told by Cox before May that Cox had numerous other suppliers,
including Danny Warren."  Id.  Hernandez contends that this
statement "went to the core of credibility of the affiant" and
warranted a Franks hearing and suppression of evidence recovered
from the search of his residence.  Id.  The Government posits
that Attorney Tower acted properly because the affidavit
contained other information supporting a finding of probable
cause.[4]  Supp. Opp. at 14–16.  The court is unpersuaded by
Hernandez's argument.

---

   [4] Attorney Tower agrees with the Government.  Tower Decl'n
¶ 10 ("After purging [the] misrepresentations, what remained [in
the affidavit], including the three consensual telephone calls
between Cox and Hernandez that occurred between February 25 and
February 28, 2005, during which Mr. Hernandez implicated himself,
was independently legally sufficient to support the warrant.").

"A defendant is entitled to a <u>Franks</u> hearing when he makes a substantial preliminary showing that a false statement was (1) deliberately or recklessly included in an affidavit submitted in support of a search warrant; and (2) material to the magistrate's finding of probable cause." <u>United States v. Fowlie</u>, 24 F.3d 1059, 1066 (9th Cir. 1994). "When challenging a warrant affidavit pursuant to <u>Franks</u>, the defendant must not only specify which portions are false, but must also furnish affidavits or other reliable documentation in support of his challenge or satisfactorily explain the absence of such supporting documentation." <u>Id.</u>

The application for a warrant to search Hernandez's residence was supported by the affidavit of Joe A. Luciano ("Luciano"), a deputy sheriff with the Los Angeles County Sheriff's Department. Ex. 6 (attached to Supp. Opp) at 1, 7. In his affidavit, Luciano states that he spoke with Officer Peralta, who informed Luciano that "COX elected to cooperate and identified HERNANDEZ as his source of supply." <u>Id.</u> at 8. Luciano also alleges in the affidavit that "COX deals only with HERNANDEZ and has no knowledge of any other members operating in the Los Angeles area." <u>Id.</u>

The only statement in the affidavit that Hernandez identifies as false is Luciano's statement that "COX deals only with HERNANDEZ." Supplemental Memo. at 15. Hernandez says the statement is false because "Peralta was told by Cox before May that Cox had numerous other suppliers, including Danny Warren."

<u>Id.</u>  Although Hernandez maintains that Officer Peralta knew that
Cox had more than one supplier, Luciano, not Officer Peralta,
prepared and signed the affidavit.  <u>See</u> Ex. 6 (attached to Supp.
Opp.) at 1.  Nowhere does Hernandez allege that <u>Luciano</u> knew or
should have known whether Cox had suppliers other than Hernandez.
Without more, Hernandez fails to meet his burden of establishing
a "substantial preliminary showing" that Luciano deliberately or
recklessly included a false statement in the affidavit.  <u>See</u>
<u>Fowlie</u>, 24 F.3d at 1066.  Attorney Tower was therefore not
constitutionally ineffective for declining to challenge Luciano's
affidavit.

Moreover, even if Luciano had deliberately withheld
information about other people Cox dealt with, that would not
have nullified statements that Cox had dealings with Hernandez
sufficient to establish probable cause to search Hernandez's
home.

> 3.   Other Assertions of Ineffective Assistance
>      of Counsel.

Hernandez also argues that Attorney Tower was
ineffective when she:  (1) stipulated to an incorrect spelling of
a street name that he did not agree to;[5] (2) stipulated to the
use of "a non-original telephone call message" that he did not

---

[5] According to Attorney Tower, "there was no stipulation
concerning this exhibit."  Tower Decl'n ¶ 4.

agree to;[6] (3) failed to object to and inform the court of the
Government's coaching of a witness;[7] (4) failed to object to the
trial schedule;[8] and (5) failed to admit into evidence "a text
message and mail receipt containing a similar message to the one
introduced by the government" and "a letter . . . that was in her
possession prior to and during trial."[9]  Supervisory Motion at 5,
10-13, 18, 21; Supplemental Memo. at 15-16; Declaration of Todd
Anthony Hernandez (5/1/2007) ¶ 11, Hernandez (7/5/2007) Decl'n
¶ 5; Hernandez (8/10/2007) Decl'n ¶¶ 4, 6, 16, 17(b).  Although
Hernandez discusses Attorney Tower's alleged actions in detail,

---

[6] Attorney Tower says, "Hernandez was informed of and agreed
to the reason for stipulating to the duplicate tape of the
telephone conversation."  Tower Decl'n ¶ 5.

[7] Special Agent Jason Alznauer ("Agent Alznauer"), the
person Hernandez says allegedly coached a Government witness,
denies having coached any witness.  Declaration of Jason Alznauer
(7/18/2007) ¶ 3 ("I have been advised of an allegation made
against me that I was somehow coaching a trial witness who was
then testifying.  I categorically deny that this ever happened.
At no time did I coach or signal to any witnesses.").
Additionally, Attorney Tower states that she confronted Agent
Alznauer, who told her he had not coached any witnesses.
Attorney Tower "had no reason to disbelieve him."  Tower Decl'n
¶ 6.

[8] According to Attorney Tower, she "had absolutely no legal
basis upon which to object to the five-day recess."  Tower Decl'n
¶ 7.  In fact, she says that the "recess gave [her] additional
time to prepare for further cross-examination of Cox for the next
trial day."  Id.

[9] Attorney Tower explains that, because the documents were
"not self-authenticating and would have required [Hernandez's]
testimony to explain their significance to the jury," she did not
seek to admit that evidence because Hernandez "elected not to
testify in a colloquy with the court."  Tower Decl'n ¶ 9.

nowhere does he explain how he was prejudiced by those actions or show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Strickland, 466 U.S. at 694.  Because Hernandez establishes no prejudice caused by Attorney Tower's performance and assistance as trial counsel, the court rejects his contentions that she was constitutionally ineffective.  See id. at 696.

At the final hearing before this court, Hernandez appeared to be also complaining about a trial stipulation summarizing what a postal worker would have testified to if called as a live witness.  Hernandez's objection to Attorney Tower's agreement to this summary was not, however, based on an expectation that live testimony would have differed from the stipulation.  Instead, Hernandez explained what he would have liked the witness to say.  He shows no prejudice arising from that stipulation.

IV.      CONCLUSION.

For the reasons above, Defendant's motion to dismiss the Indictment and motion requesting the court to invoke its supervisory powers are denied.

The substance of this order was placed on the record before the court sentenced Hernandez.  Because there had been considerable confusion in the paperwork, the court asked counsel at the hearing on August 23, 2007, whether the court had failed

27

to rule on any issue raised by Hernandez's motions.  Counsel for
Hernandez and counsel for the Government agreed that the court
had ruled on all such issues.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii; August 24, 2007.



_____
Susan Oki Mollway
United States District Judge


**U.S. v. Hernandez**, Cr. No. 05-000196 SOM; ORDER DENYING DEFENDANT'S MOTION TO
DISMISS INDICTMENT AND MOTION REQUESTING COURT TO INVOKE ITS SUPERVISORY
POWERS TO SET ASIDE VERDICT AND DISMISS THE INDICTMENT WITH PREJUDICE.