IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Crim. No. 05-0196 SOM |
| | ) | Civ. No. 10-00674 SOM/KSC |
| Plaintiff, | ) | |
| | ) | ORDER DENYING TODD ANTHONY |
| vs. | ) | HERNANDEZ'S PETITION FOR RELIEF |
| | ) | UNDER 28 U.S.C. § 2255, ECF NO. |
| TODD ANTHONY HERNANDEZ, | ) | 157; |
| | ) | |
| Defendant. | ) | ORDER DENYING AS MOOT |
| | ) | HERNANDEZ'S MOTION TO AMEND |
| | ) | PETITION, ECF NO. 178; |
| | ) | |
| | ) | ORDER DENYING HERNANDEZ'S |
| | ) | 1) REQUEST THAT THIS COURT |
| | ) | INVESTIGATE WHY A DOCUMENT WAS |
| | ) | NOT FILED, 2) MOTION TO COMPEL |
| | ) | HIS OWN COUNSEL TO RELEASE |
| | ) | DOCUMENTS; AND 3) MOTION FOR |
| | ) | EXTENSION OF TIME TO FILE HIS |
| | ) | REPLY BRIEF, ECF NO. 179 |

ORDER DENYING TODD ANTHONY HERNANDEZ'S PETITION FOR RELIEF UNDER
28 U.S.C. § 2255, ECF NO. 157; ORDER DENYING AS MOOT HERNANDEZ'S
MOTION TO AMEND PETITION, ECF NO. 178; ORDER DENYING HERNANDEZ'S
1) REQUEST THAT THIS COURT INVESTIGATE WHY A DOCUMENT WAS NOT
FILED, 2) MOTION TO COMPEL HIS OWN COUNSEL TO RELEASE
DOCUMENTS; AND 3) MOTION FOR EXTENSION OF TIME
TO FILE HIS REPLY BRIEF, ECF NO. 179

I.      INTRODUCTION AND BACKGROUND.

On September 9, 2005, a jury found Defendant Todd

Anthony Hernandez guilty of (1) knowingly and intentionally

conspiring to distribute and to possess with intent to distribute

500 grams or more of a mixture or substance containing a

detectable amount of methamphetamine, its salts, isomers, or

salts of its isomers ("crystal methamphetamine") and

(2) knowingly and intentionally distributing 500 grams or more of

crystal methamphetamine.  See Verdict at 1-2, Sept. 9, 2005,

Electronic Case File ("ECF") No. 46.  Pamela O'Leary Tower, Esq.,

represented Hernandez during the trial.[1]  See Declaration of

Pamela O'Leary Tower, ¶ 1, dated Aug. 15, 2007 (filed Aug. 17,

2007), ECF No. 124-1.

On August 23, 2007, the court sentenced Hernandez to

262 months in prison and 10 years of supervised release for Count

1 and Count 2, with the sentences to run concurrently.  Hernandez

was also ordered to pay special assessments of $200 ($100 per

count).  See Minutes, Aug. 23, 2007, ECF No. 127; Judgment in a

Criminal Case, Aug. 29, 2007, ECF No. 133.

At Hernandez's sentencing hearing, the court orally

denied his motion to dismiss indictment and set aside verdict.

See Minutes, Aug. 23, 2007, ECF No. 127.  A written order denying

that motion was filed the following day.  See Order Denying

Defendant's Motion to Dismiss Indictment and Motion Requesting

Court to Invoke its Supervisory Powers to Set Aside Verdict and

Dismiss Indictment With Prejudice, Aug. 24, 2007, ECF No. 128.

Hernandez's current § 2255 petition reraises many of the

arguments previously rejected in that order.  Id.

Hernandez appealed, raising many of the same arguments

he now asserts in his § 2255 petition.  On February 24, 2009, the

---

[1]After trial, Hernandez was briefly represented by a
different attorney drawn from the court's Criminal Justice Act
panel.  For sentencing proceedings and on appeal, Hernandez
retained yet a different attorney, Phillip A. DeMassa.  See,
e.g., Substitution of Attorneys, Nov. 1, 2006, ECF No. 83.

Ninth Circuit Court of Appeals affirmed Hernandez's conviction and sentence in a memorandum disposition. See Memorandum, No. 07-10428, Feb. 24, 2009, ECF No. 152. That memorandum disposition was amended on April 3, 2009. See Order, No. 07-10428, Apr. 3, 2009, ECF No. 153. On October 5, 2009, the Supreme Court of the United States denied Hernandez's petition for writ of certiorari. See ECF No. 156.

On October 4 or 5, 2010, Hernandez timely filed his § 2255 petition when he handed it to prison officials.[2] See 22 U.S.C. § 2255(f)(1) (providing a one-year limitation period that, in relevant part, runs from "the date on which the judgment of conviction becomes final"); Campbell v. Henry, 614 F.3d 1056,

---

[2]On October 4 or 5, 2010, Hernandez handed to prison officials his (1) "Petition Requesting a Stay in the Filing of a Motion to Vacate, Set Aside or Correct Sentence By a Person in Federal Custody, Pursuant to 28 U.S.C. § 2255 Until the Resolution of Fed. R. Civ. P. 60(b) Petition As Fraud Has Been Committed Directly Upon the Courts to Rectify a Manifest Miscarriage of Justice," delivered to prison officials on Oct. 5, 2010, filed Oct. 12, 2010, ECF No. 157; (2) "Application/Request to File Extended Page Fed. R. Civ. P., Rule 60(b) Petition to Rectify a Manifest Miscarriage of Justice to Prevent Fraud Upon the Court," delivered to prison officials Oct. 4, 2010, filed Oct. 12, 2010, ECF No. 158; and (3) "Request to Proceed in Forma Pauperis to Enable Court Filings, Pursuant to Fed. R. Civ. P., Rule 60(b), to Prevent Fraud Upon the Courts and Rectify a Manifest Miscarriage of Justice," delivered to prison officials on Oct. 4, 2010, filed Oct. 12, 2010, ECF No. 159. This court asked Hernandez how he wanted the court to construe those documents. See ECF No. 161. On November 15, 2010, Hernandez informed the court that he would like those documents construed as a petition under § 2255. See ECF No. 163. As applicable, the court therefore considers the matters raised in those documents to be raised in a petition under § 2255.

1058-59 (9th Cir. 2010) ("Under the mailbox rule, a prisoner's pro se habeas petition is deemed filed when he hands it over to prison authorities for mailing to the relevant court." (quotation omitted)); United States v. Aguirre-Ganceda, 592 F.3d 1042, 1045 (9th Cir. 2010) (holding that, when a defendant seeks review of a decision by the Ninth Circuit, a defendant's judgment becomes final and § 2255's one-year limitation period begins to run when the Supreme Court affirms a conviction on the merits or denies a petition for a writ of certiorari); Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying Rule 6(a) of the Federal Rules of Civil Procedure to calculate a one-year limitation period under the Antiterrorism and Effective Death Penalty Act of 1996 to hold that, when a state supreme court ruled on June 19, 1997, the period began to run on June 20, 1997, and expired one year later on June 19, 1998).

Hernandez has been a prolific pro se filer. Faced with lack of clarity and succinctness in his filings, this court has done its best to glean his arguments from his many submissions, including ECF Nos. 157, 158, 159, 163, 176, 178, and 179. Because the court is already considering the arguments raised by Hernandez in his many submissions, the court denies as moot Hernandez's request to amend his § 2255 petition to include those documents. See ECF No. 178.

The court also denies Hernandez's request for the court to investigate why certain documents were not filed. <u>See</u> ECF No. 179. Hernandez says that he sent these documents, which are attached as exhibits to ECF No. 179, to the court on May 27, 2011, but complains that they were not promptly reflected in the case docket. Because this court will consider those documents as if they had been filed shortly after May 27, 2011, the court finds no prejudice to Hernandez and no reason to investigate why a mailed document was not entered immediately on the case docket. To the extent Hernandez's investigation request seeks to compel "defense counsel to release Hernandez's court documents and case file" to him because "additional fraud upon the court has been detected," Hernandez's request is denied. Hernandez has failed to make any showing of a fraud or any "additional fraud" committed on the court, despite having had ample time to do so. It is also unclear what documents have been withheld from him such that a document request made after briefing deadlines have passed would yield new evidence of fraud. To the extent Hernandez seeks additional time to file a reply in support of his § 2255 petition, the motion is denied. Hernandez has submitted more filings than allowed by court rule. This court has considered the arguments raised in those submissions and, because Hernandez has failed to demonstrate any reason to continue his reply brief deadline, declines to delay this matter any further.

Hernandez raised the bulk of his arguments before the Ninth Circuit, which rejected those arguments. Hernandez may not relitigate them now. To the extent Hernandez could have raised other arguments to the Ninth Circuit but failed to do so, he has procedurally defaulted on the arguments. Finally, to the extent Hernandez may be allowed to raise his arguments in this petition, those arguments lack merit. Accordingly, the court denies Hernandez's § 2255 petition, ECF No. 157.

II.     ANALYSIS.

A federal prisoner may move to vacate, set aside, or correct his or her sentence if it "was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, or . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255. The law is clear with respect to whether certain kinds of claims can and cannot be raised in a § 2255 petition.

For example, a § 2255 petition cannot be based on a claim that has already been disposed of by the underlying criminal judgment and ensuing appeal. As the Ninth Circuit stated in Olney v. United States, 433 F.2d 161, 162 (9th Cir. 1970), "Having raised this point unsuccessfully on direct appeal,

appellant cannot now seek to relitigate it as part of a petition under § 2255."

Even when a § 2255 petitioner has not raised an alleged error at trial or on direct appeal, the petitioner is procedurally barred from raising an issue in a § 2255 petition if it could have been raised earlier, unless the petitioner can demonstrate both "cause" for the delay and "prejudice" resulting from the alleged error. As the Court said in United States v. Frady, 456 U.S. 152, 167-68 (1982), "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." Id.; accord Davis v. United States, 411 U.S. 233, 242 (1973). To show "actual prejudice," a § 2255 petitioner "must shoulder the burden of showing, not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Frady, 456 U.S. at 170.

Some of Hernandez's claims are couched as ineffective assistance of counsel claims, although most of those claims raise

issues that could have been raised earlier.  To establish
ineffective assistance of counsel, Hernandez must show that
(1) his counsel's performance was deficient, and (2) the
deficient performance prejudiced his defense.  Strickland v.
Washington, 466 U.S. 668, 687 (1984).  There is "a strong
presumption" that counsel's conduct was reasonable and that
counsel's representation did not fall below "an objective
standard of reasonableness" under "prevailing professional
norms."  Id. at 688.  Even if a petitioner can overcome the
presumption of effectiveness, the petitioner must still
demonstrate a "reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different."  Id. at 694.  Because "[i]t is all too tempting
for a defendant to second-guess counsel's assistance after
conviction," judicial scrutiny of counsel's performance is highly
deferential.  Id. at 689.

   A. Hernandez May Not Now Challenge His Prior Texas
     Felony Drug Conviction.

  Hernandez argues that the court improperly enhanced his
sentence pursuant to 21 U.S.C. § 841(b)(1)(A) based on a prior
conviction in Texas for a felony drug offense.  Hernandez
contends that the Texas court documents forming the basis of that
enhancement were fraudulent and unreliable and therefore should

not have been considered in determining whether he had a prior felony drug conviction.  See ECF No. 159 at 11; ECF No. 163 at 4. This argument was made to and rejected by this court.  The argument was then noted to the Ninth Circuit in connection with Hernandez's argument that his Texas conviction should not have been considered.  See Appellant's Opening Brief at 15-16, No. 07-10428, ECF No 172-1.  The Ninth Circuit determined that Hernandez's Texas conviction was a felony drug offense that allowed his sentence to be enhanced pursuant to § 841(b)(1)(A). See Memorandum at 4-5, No. 07-10428, ECF No. 152.  The Ninth Circuit rejected Hernandez's challenge to consideration of the prior Texas conviction and his claim that the Texas conviction was invalid.  See Order, No. 07-10428, ECF No. 172-8.  Because the Ninth Circuit rejected Hernandez's challenge to the facts supporting his Texas conviction, Hernandez may not now seek to have this court relitigate the matter through a § 2255 petition. See Olney, 433 F.2d at 162.

Even if the court were to consider the argument in the context of an ineffective assistance of counsel claim, or deem it not sufficiently raised to the Ninth Circuit, Hernandez would still need to show prejudice.  See Strickland, 466 U.S. at 687; Frady, 456 U.S. at 167-68.  He does not do so.  Hernandez's

§ 2255 petition complains of a "forged finger-print" on a
September 1997 "judgment revoking probation."  See ECF No. 159 at
11; ECF No. 163 at 4; ECF No. 119-3.  In other words, Hernandez
complains of post-conviction conduct that does not affect the
underlying Texas felony drug conviction, which occurred in
November 1993.  See Judgment on Jury Verdict of Guilty (dated
Nov. 4, 1993), ECF No. 119-2 at pageID# 1306.

> B.   Hernandez May Not Relitigate His Speedy Trial Act
>      Claim.

Hernandez complains in his § 2255 petition about the
delay between his arrest in Los Angeles and the date of his first
appearance in Hawaii.  See ECF No. 159 at 8-9.  He made this
argument to the Ninth Circuit.  See ECF No. 172-1 at 27-29.  The
Ninth Circuit rejected the argument, ruling that no Speedy Trial
Act violation had occurred.  See ECF No. 152 at 3.  Because the
Ninth Circuit has decided the issue, Hernandez may not seek to
relitigate it through the present § 2255 petition.  See Olney,
433 F.2d at 162.

> C.   Hernandez May Not Relitigate His Claim That The
>      Grand Jury Was Not Presented with Exculpatory
>      Evidence.

Hernandez claims that the grand jury was not presented
with various exculpatory evidence.  See ECF No. 159 at 14 n.5
(government did not tell grand jury that a tape had been erased)

and at 20-22 (agent Lawrence Peralta did not tell grand jury about withholding <u>Brady</u> material or a duplicate tape).

On direct appeal to the Ninth Circuit, Hernandez argued that the grand jury was not told of various exculpatory evidence. <u>See</u> ECF No. 172-1 at 19-23; ECF No. 172-3 at 10-11.  The Ninth Circuit rejected that argument, reasoning that prosecutors have no obligation to disclose "substantial exculpatory evidence" to a grand jury, even when that evidence impeaches the credibility of a key witness.  <u>See</u> ECF No. 152 at 2.  Because the Ninth Circuit has already decided the issue on direct appeal, Hernandez may not relitigate it in this § 2255 petition.  <u>See</u> <u>Olney</u>, 433 F.2d at 162.

> D.    Hernandez May Not Relitigate His Improper Closing
>        Claim.

Hernandez argues that the Government gave an improper closing argument, asserting that it "deliberately corrupted the reasonable doubt jury instructions."  <u>See</u> ECF No. 163 at 9.  This argument was made on direct appeal to the Ninth Circuit.  <u>See</u> ECF No 172-1 at 25.  The Ninth Circuit rejected the argument.  <u>See</u> ECF No. 152 at 2-3.  Accordingly, Hernandez may not relitigate it in this § 2255 petition.  <u>See</u> <u>Olney</u>, 433 F.2d at 162.

     In the § 2255 petition, Hernandez complains about the
Government's use of material concerning Gordon Lee Cox.  <u>See</u> ECF
No. 159 at 5, 23-26; ECF No. 163 at 6-7.  Hernandez says that Cox
was arrested in Hawaii for possession of two pounds of
methamphetamine.  <u>Id.</u> at 23.  Hernandez says that, at the time of
his arrest, Cox confessed to being in possession of firearms.
Hernandez says that Cox was never charged with firearm
violations.  <u>Id.</u> at 24.  Hernandez says that Cox must have lied
when he testified that he was made no promises for his testimony
against Hernandez.  <u>Id.</u> at 25.  Hernandez claims that the
Assistant United States Attorney who prosecuted the case
therefore knowingly put before the court perjured testimony.  <u>Id.</u>
Hernandez may also be complaining about Cox's inconsistent
statements about the amount of methamphetamine he and Hernandez
were involved with (30 pounds per month verses 15 pounds per
month).  <u>See id.</u> at 21 (referencing August 30, 2005, transcript);
Transcript of Proceedings, Aug. 30, 2005, ECF No. 88 at 1-5 and
1-6 (indicating that Cox told Government agents that he and
Hernandez were involved with methamphetamine purchases of 30
pounds per month, then later told Government agents that, when he

made that statement, he had been high on ice and that the amount of drugs was actually closer to 15 pounds per month).

Hernandez complained about these same events to the Ninth Circuit in the context of claiming that the grand jury (as opposed to the trial jury) was misled and that his trial counsel was ineffective in having abandoned her <u>Franks</u> hearing request to challenge a warrant based on Cox's statements. <u>See</u> Appellant's Opening Brief at 19-22, No. 07-10428, ECF No. 172-1. The Ninth Circuit rejected Hernandez's arguments, ruling that "notwithstanding any alleged perjured testimony before the grand jury, there was sufficient non-perjurious testimony to support the indictment" and that trial counsel was not ineffective in withdrawing the <u>Franks</u> hearing request. <u>See</u> ECF No. 152 at 2-3 (quotations and punctuation omitted). Accordingly, to the extent Hernandez may be rearguing the issues in this § 2255 petition, <u>see</u> ECF No. 163 at 3, Hernandez may not do so. <u>See</u> <u>Olney</u>, 433 F.2d at 162.

To the extent Hernandez complains that the jury was misled, he is procedurally barred from raising the argument now, as he fails to show cause and actual prejudice justifying his failure to raise the issue previously. <u>See</u> <u>Frady</u>, 456 U.S. at 167-68. Even assuming that Hernandez asked his appellate counsel

to raise the issue, Hernandez was not prejudiced. Cox testified on the third and fourth days of trial, September 1 and 2, 2005. On cross-examination, Hernandez's attorney discussed with Cox the 30 pounds of "ice" he and Hernandez had been buying and selling every month. See Transcript of Proceedings at 4-26 to 4-27, Sept. 2, 2005, ECF No. 90. Hernandez's attorney then brought out Cox's inconsistent statements about drug amount, eliciting admissions by Cox that, at the time he made the statement about 30 pounds per month, he was "high," and that the actual amount was closer to 15 pounds per month. See id. at 4-29. Hernandez was not prejudiced because the jury was aware of Cox's inconsistent statements. Moreover, statements that the methamphetamine deals were only 15 pounds per month are not exculpatory.

On cross-examination, Cox testified that he had firearms when he was arrested. Id. at 4-27. He had previously testified that he was charged with various drug crimes, but not firearm crimes. See Transcript of Proceedings, Sept. 1, 2005 at 3-6; 3-7; 3-83 to 3-84; 3-86. Cox testified that, because of the drug charges alone, he was facing a mandatory life term. Id. at 3-5, 3-7 to 3-8. Accordingly, Hernandez shows no prejudice arising out the absence of firearm charges against Cox, as the

14

jury was actually told that Cox had not been charged with having the firearms he had.  In any event, given the mandatory life term Cox was facing, any such charge would have been superfluous.

      F.    Hernandez is Not Entitled to Relief Based on the
           March 9, 2005, Recorded Telephone Call.

Hernandez argues that the Government "fabricated" a March 9, 2005, recording of a call and that his trial attorney was ineffective because she stipulated to the authenticity of the recording.  See ECF No. 159 at 14-16; ECF No. 163 at 5. Hernandez says that the Government concealed evidence when it made a transcript of this call and wrote the word "unintelligible" on it.  Hernandez says that the Government failed to identify a "daughter" on the recording who could have testified.  Id.

Although Hernandez accuses the Government of "fabricating" the transcript, it appears that he bases this contention on the Government's use of a duplicate copy of the recorded conversation at trial.  Apparently, the original tape of the conversation recorded in Hawaii had been inadvertently destroyed.  However, California law enforcement had also been monitoring Hernandez's calls pursuant to a California warrant. Hernandez's trial attorney, Tower, submitted a declaration in August 2007 that indicated that Hernandez was aware of an

original copy of the same conversation that was recorded in California. See Declaration of Counsel ¶ 5, dated Aug. 15, 2007, filed Aug. 17, 2007, ECF No. 124-2. Tower says that neither she nor Hernandez wanted the jury to hear that Hernandez was a "person of interest to California law enforcement as a possible large-scale drug trafficker." Id. Accordingly, a strategic decision was made to stipulate to allowing the Government to use a duplicate copy of the original Hawaii tape, instead of requiring authentication at trial of the original California tape. Id.

On appeal, Hernandez argued that his trial attorney was ineffective when she stipulated to the use of the duplicate recording. See ECF No. 172-1 at 31. The Ninth Circuit rejected the argument, ruling that Hernandez had not shown that he had been prejudiced. See Memorandum at ECF No. 152 at 3. Because Hernandez has already unsuccessfully litigated this ineffective assistance of trial counsel claim on appeal, he may not now relitigate it in this § 2255 petition. See Olney, 433 F.2d at 162.

Even assuming that Hernandez's appellate attorney did not sufficiently raise the issue on appeal despite Hernandez's alleged request that the attorney do so, see ECF No. 159 at 36,

16

Hernandez shows no prejudice. Hernandez does not identify how the duplicate copy differed from the original. Nor does he explain how any part of the transcript that was "unintelligible" would have made a difference. Finally, Hernandez does not say what the unidentified "daughter" would have testified to had she been called at trial. Under these circumstances, Hernandez is unpersuasive in arguing that his conviction should be vacated based on ineffective assistance of counsel concerning the Government's reliance at trial on the telephone call of March 9, 2005. See Strickland, 466 U.S. at 687.

G. Hernandez is Not Entitled to Relief Based on Government Agents' Failure to Acknowledge that a Polynesian Sent the Package Containing Drugs.

Hernandez complains about the Government's failure to identify the Polynesian sender of the package containing drugs that was intercepted by law enforcement. He says that the Government must have had some way of identifying her. Hernandez accuses his trial counsel of having been ineffective in not introducing evidence establishing that he was at work at the time the package was sent to the wrong address by the unidentified Polynesian woman. See ECF 159 at 16-18, 33-35. These claims fail because Hernandez has already unsuccessfully raised them to

the Ninth Circuit.  See Appellant's Reply Brief at 22-23, ECF No. 172-3; Memorandum at 3, ECF No. 152.

Hernandez also fails to establish ineffective assistance of trial counsel.  See Strickland, 466 U.S. at 687-88 (holding that, to demonstrate ineffective assistance of counsel, a defendant must show that (1) his or her counsel's performance was deficient, and (2) the deficient performance prejudiced his or her defense).

The Government conceded at trial that Hernandez might not have sent the package containing drugs.  In its opening statement, for example, the Government told the jury that, with respect to Count 2, which involved the package of drugs sent by an unknown female, the shipment was arranged by telephone and the jury should not "expect to see any evidence that Mr. Hernandez himself actually mailed or brought the parcel to a post office to be mailed to Hawai`i."  See Transcript of Proceedings at 1-43 to 1-44, Aug. 30, 2005, ECF No. 88.  The jury was told, "The evidence will show that an unknown woman or some unknown female actually mailed this 14-pound meth parcel at a post office in Harbor City on March 9."  Id. at 1-44.  The prosecution reiterated these statements in its closing.  See Transcript of Proceedings at 5-61, Sept. 8, 2005, ECF No. 91.

Hernandez was charged in Count 2 with distributing methamphetamine in violation of § 841(a)(1).  The jury was instructed that Hernandez could be found guilty of Count 2 "even if the defendant personally did not commit the act or acts constituting the crime but aided and abetted in its commission." See Transcript of Proceedings at 5-23 to 5-24, Sept. 8, 2005, ECF No. 91.  Even if Hernandez was at work when the package was mailed by someone else, that would not negate Hernandez's drug distribution conviction based on aiding and abetting liability.

> H.  Hernandez is Not Entitled to Relief Based on an Incorrect Package Address of "Upal Pl." Rather than "Upai Pl."

Hernandez contends that the Government misled the jurors when it argued that the package, which was addressed to "Upal Pl." instead of to "Upai Pl.," could have easily been misaddressed because "mainlanders" could easily confuse an "l" with an "i."  Hernandez says that his trial counsel was ineffective in stipulating to or allowing testimony concerning the misspelling.  See ECF 159 at 16-18.

Hernandez's coconspirator, Cox, testified that he would have Hernandez send parcels of methamphetamine to him at the "Upai Place" address in the name of "Bob Todd."  See Transcript of Proceedings, Sept. 1, 2005 at 3-96.  Cox testified that, when

19

Bob Todd received the packages, Todd would then give them to Cox. Id. at 3-96 to 3-97. The use of "Upal" rather than "Upai" in the address goes to the weight of the evidence. The Government told the jury about the misspelling in its opening statement. See Transcript of Proceedings at 1-41 to 1-42, Aug. 30, 2005, ECF No. 88. United States Postal Inspector Mitchell Tabera also testified about the misspelling. See Transcript of Proceedings at 2-58 and 2-64, Aug. 31, 2005, ECF No. 89. Tabera testified that, in his experience, people from the mainland sometimes have trouble spelling and pronouncing Hawaiian names. Id. at 2-64.

Hernandez raised his complaint about the mistaken address on appeal. See ECF No. 172-1 at 31. The Ninth Circuit ruled that Hernandez had not shown that he was prejudiced by his trial counsel's actions and had therefore failed to establish ineffective assistance of counsel. See ECF No. 152 at 3. Hernandez may not relitigate the issue in this § 2255 petition. See Olney, 433 F.2d at 162.

I. No Brady Violation Justifies Relief.

Hernandez claims that the Government committed multiple violations of its duty under Brady v. Maryland, 373 U.S. 83 (1963), to "provide exculpatory evidence to a criminal defendant." United States v. Blanco, 392 F.3d 382, 387 (9th Cir.

2004).  "To establish a <u>Brady</u> violation, the evidence must be
(1) favorable to the accused because it is either exculpatory or
impeachment material; (2) suppressed by the government, either
willfully or inadvertently; and (3) material or prejudicial."
<u>Id.</u>  "Impeachment evidence is exculpatory evidence within the
meaning of <u>Brady</u>" and includes material that "bears on the
credibility of a significant witness in the case."  <u>Id.</u>
"Impeachment evidence is favorable [<u>Brady</u>] material 'when the
reliability of the witness may be determinative of a criminal
defendant's guilt or innocence."  <u>Id.</u>  "However, a failure to
disclose <u>Brady</u> evidence 'is constitutional error only if the
information is material, that is, only if there is a reasonable
probability that the result of the proceeding would have been
different had the information been disclosed.'"  <u>United States v.
Serv. Deli Inc.</u>, 151 F.3d 938, 943 (9th Cir. 1998).

Hernandez argues that, when Cox was being held in a
hotel room from February 25, 2005, through March 14, 2005, Cox
contacted people.  Hernandez says that Cox conducted drug
transactions, received drug proceeds, and received firearms, but
that the Government withheld this information.  <u>See</u> ECF No. 159
at 19; ECF No. 163 at 5.  Hernandez made this argument in
conjunction with his sentencing hearing.  <u>See</u> ECF No. 126 at 3.

The court rejected that argument, ruling that Hernandez had failed to show that his claimed Brady violation was material. See ECF No. 128 at 4. The court explained during Hernandez's sentencing that the claimed violation was not material because Cox's alleged drug deals with other people did not lessen the force of the evidence demonstrating that Cox was dealing drugs with Hernandez. See Transcript of Proceedings at 33, Aug. 23, 2007, ECF No. 144. On appeal, Hernandez argued that Brady material was withheld concerning Cox's drug deals with others. See ECF No. 172-1 at 23. The Ninth Circuit rejected Hernandez's Brady argument, ruling that "Hernandez failed to make any showing that these reports were material." See ECF No. 152 at 2. Because he has already litigated and lost this issue on appeal, Hernandez may not relitigate it again here. See Olney, 433 F.2d at 162.

### J. No Henthorn Violation Justifies Relief.

On page 20 of his petition, Hernandez claims that, pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), information in Agent Lawrence Peralta's personnel file should have been disclosed to Hernandez. See also ECF No. 163 at 6. Hernandez made this Henthorn argument on the fourth day of trial. See Transcript of Proceedings at 4-12 to 4-15, ECF No.

22

90. The court reviewed that information _in camera_ and determined that it was irrelevant and that the information did not have to be turned over to Hernandez. See _id._ at 4-16. The court ruled that the information did not go to the agent's credibility, the quality of investigative techniques or procedures, or to destruction of evidence. _Id._ Hernandez did not appeal this ruling and has therefore procedurally defaulted on it, as he has not shown "cause" and "prejudice" such that he should be able to raise it in this § 2255 petition. See _Frady_, 456 U.S. at 167-68.

K. Trial Counsel Was Not Ineffective in Withdrawing the Request for A _Franks_ Hearing, and Hernandez May Not Relitigate the Issue.

"A defendant is entitled to a _Franks_ hearing when he makes a substantial preliminary showing that a false statement was (1) deliberately or recklessly included in an affidavit submitted in support of a search warrant; and (2) material to the magistrate's finding of probable cause." _United States v. Fowlie_, 24 F.3d 1059, 1066 (9th Cir. 1994). "When challenging a warrant affidavit pursuant to _Franks_, the defendant must not only specify which portions are false, but must also furnish affidavits or other reliable documentation in support of his challenge or satisfactorily explain the absence of such supporting documentation." _Id._

Hernandez claims that his trial counsel was ineffective when she withdrew her request for a <u>Franks</u> hearing.  <u>See</u> ECF No. 159 at 22-23.  Hernandez raised this argument to this court in connection with his sentencing.  <u>See</u> ECF No. 103 at 7.  This court rejected that argument.  <u>See</u> ECF No. 128 at 4.  As noted above, Hernandez appealed the issue to the Ninth Circuit.  <u>See</u> ECF No. 172-1 at 29.  The Ninth Circuit also rejected the argument, ruling, "Nor was trial counsel ineffective in withdrawing a request for a <u>Franks</u> hearing to challenge the affidavits supporting the search of his residence."  <u>See</u> ECF No. 152 at 3.  Hernandez may not relitigate the issue in this petition.  <u>See</u> <u>Olney</u>, 433 F.2d at 162.

> L.   Hernandez May Not Relitigate an Ineffective
>      Assistance of Trial Counsel Claim Based on
>      Witness Tampering and is Procedurally Barred From
>      Raising a Witness Tampering Claim.

Hernandez complains of "witness tampering," claiming that Agent Jason Alznauer was coaching witnesses as they testified.[3]  <u>See</u> ECF 159 at 26-29.  The court notes that the

---

[3]Hernandez also says that this judge "warned" Agent Alznauer "of improper conduct pertaining to holding the door open for the jury."  <u>See</u> ECF No. 159.  Hernandez stretches the facts on this point, as this court merely did not want the Government to seem nicer than the defense merely because Government personnel was closer to the door:

> I'm going to ask that government -- people associated
> with the government not be so nice as to hold the door

scope of this claim has greatly expanded, with Hernandez now complaining that he caught Agent Alznauer coaching ten witnesses. Id. at 28; ECF No. 163 at 7.  When Hernandez originally raised this argument, he complained of "catching" Agent Alznauer coaching a single witness.  See ECF No. 103 at 11-12.  This court was not persuaded by Hernandez's "witness coaching" argument, as Hernandez made no showing of prejudice.  The court also questioned how Hernandez could have seen someone sitting behind him "coach" the witness sitting in front of him.  See ECF No. 128 at 4, 16.  Hernandez appealed the "witness coaching" issue in the context of an ineffective assistance of counsel claim.  See ECF No. 172-1 at 31.  In the Reply Brief he filed on appeal, Hernandez extensively briefed the issue.  See ECF No. 172-3 at 18-20.  The Ninth Circuit rejected the claim of ineffective assistance of counsel involving alleged "witness coaching."  See ECF No. 152 at 3.

To the extent Hernandez is claiming that his trial counsel was ineffective in failing to object to or otherwise

---

for the jurors.  I don't want any advantage by just, you know, trying to extend courtesies that you get only by virtue of your geography within the courtroom.  I don't want Mr. Kawahara to seem like a nicer guy than Miss Tower just because you're by the door and she's not.  Okay?  Thanks.

See Transcript of Proceedings at 1-77, Aug. 30, 2005, ECF No. 88.

prevent the alleged "witness coaching" of a single witness,
Hernandez may not relitigate the issue already rejected by the
Ninth Circuit.  See Olney, 433 F.2d at 162.

To the extent Hernandez is asserting a direct argument
of "witness coaching" involving additional witnesses, he has
procedurally defaulted on the argument.  Even with respect to the
single witness referred to during the sentencing proceeding,
Hernandez failed to directly appeal that matter.  Hernandez
provides no reason for his failure to raise the argument on
appeal and identifies no "actual prejudice."  See Frady, 456 U.S.
at 167-68.  That is, he fails to show "actual and substantial
disadvantage" that infected the "entire trial with error of
constitutional dimensions."  Id. at 170.

The expansion of the alleged witness coaching from one
person to ten people strains credibility.  Hernandez's trial
counsel submitted a declaration indicating that Hernandez told
her that Hernandez believed that Agent Alznauer was coaching
Watson Moe, a Government witness.  See ECF No. 124-2 ¶ 5.  Trial
counsel says that she did not witness any such coaching, but
talked to the agent about it at a recess in the trial.  Id.  The
agent denied coaching Moe, who was testifying as a foundation and
authentication witness.  Id.; Transcript of Proceedings at 2-136
to 2-145, Aug. 31, 2005, ECF No. 89 (discussing cassette tape

26

recordings identified as exhibits 201A, 201E, 202A, 203A, 204A, 205A, 206A, and 207A, and the transcripts of those recordings). Trial counsel says that, because the tapes were later identified by Cox, any "coaching" of Moe would have been harmless.  See ECF No. 124-2 ¶ 5; Transcript of Proceedings at 3-55 to 3-58, Sept. 1, 2005 (admitting cassette tapes, 201A, 201E, 202A, 203A, 204A, 205A, 206A, and 207A into evidence).  Even assuming that Alznauer "coached" Moe, a fact this court is not here finding, any such "coaching" would not have infected Hernandez's entire trial with an error of constitutional dimensions as the tape recordings were admitted into evidence through another witness.  See Frady, 456 U.S. at 170.

To the extent Hernandez may be arguing that his appellate counsel was ineffective in the presentation of this argument to the Ninth Circuit, this ineffective assistance of counsel argument fails.  First, as stated in paragraphs 3 and 9(H) of the declaration of appellate counsel, ECF No. 169-1, it appeared that trial counsel made a strategic decision not to raise the "witness coaching" issue.  See United States v. Vela, 624 F.3d 1148, 1161 n.4 (9th Cir. 2010) (noting that ineffective assistance of counsel claims may not be based on strategic choices); Earp v. Cullen, 623 F.3d 1065, 1077 (9th Cir. 2010) (stating that strategic choices made after thorough investigation

of law and facts are virtually unchallengable).  As Hernandez was
the only person who witnessed the alleged "coaching" and as the
alleged coaching occurred during a foundational witness,
appellate counsel's presentation of the issue to the Ninth
Circuit did not fall below "an objective standard of
reasonableness" under "prevailing professional norms."
Strickland, 466 U.S. at 688.  Second, Hernandez fails to
demonstrate a "reasonable probability that, but for counsel's
unprofessional errors, the result of the proceeding would have
been different."   Id. at 694.

> ## M.   Appellate Counsel Was Not Ineffective.

Hernandez somewhat nebulously argues that his appellate
counsel was ineffective overall.  See ECF No. 159 at 35-38;
Declaration of Todd Anthony Hernandez, ECF No. 176-1 at 19-20.
Hernandez complains that he asked appellate counsel to raise
certain arguments, but counsel either did not raise them or did
not raise them strongly enough.  These arguments included Agent
Alznauer's alleged "witness coaching" and the alleged fraud on
the court (use of impeached statements; alleged fabrication of
the telephone recording of March 9, 2005; and omission of
exculpatory facts concerning a Polynesian female who sent a
package, wrong address, and Hernandez's presence at work when the
package was sent).  See ECF No. 176-1 at 19-20; ECF No. 163 at 3.

As discussed above, these arguments are not meritorious.
Accordingly, Hernandez fails to establish ineffective assistance
of counsel, as he shows no prejudice.  <u>Strickland</u>, 466 U.S. at
694.

Hernandez also complains that appellate counsel did not
allow Hernandez to review the appellate brief and deceived
Hernandez into thinking that issues could be raised for the first
time in Hernandez's reply brief on appeal.  <u>See</u> ECF No. 159 at
35; ECF No. 163 at 2 and 14.  Hernandez fails to identify with
any particularity what he would have done differently.  Even
assuming that, on appeal, he would have raised or would have
briefed more thoroughly the marginal arguments raised in this
§ 2255 petition, Hernandez fails to establish that the result of
the proceeding would have been different.  <u>See</u> <u>Strickland</u>, 466
U.S. at 688.  Because the record does not support Hernandez's
numerous contentions, appellate counsel was not ineffective.

III.     <u>CERTIFICATE OF APPEALABILITY IS DENIED.</u>

An appeal may not be taken to the court of appeals from
a final order in a § 2255 proceeding "[u]nless a circuit justice
or judge issues a certificate of appealability."  28 U.S.C.
§ 2253(c)(1)(A).  The court shall issue a certificate of
appealability "only if the applicant has made a substantial
showing of the denial of a constitutional right."  28 U.S.C.

§ 2253(c)(2). When a district court denies a § 2255 petition on the merits, a petitioner, to satisfy the requirements of section 2253(c)(2), "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). For the reasons set forth in this order, the court rules that reasonable jurists would not find this court's assessment of Hernandez's claims to be debatable or wrong. Accordingly, the court denies Hernandez certificate of appealability.

IV.     CONCLUSION.

Defendant's § 2255 petition and related motions are denied.

Given the breadth and number of issues raised by Hernandez in his § 2255 Petition, the court will not enter judgment in favor of the Government until after July 25, 2011. If Hernandez knows of any issue raised in his § 2255 filings that this court has overlooked in the present order, he should identify the issue(s) in writing no later than July 25, 2011. For each such issue Hernandez identifies, his written submission must include (1) the ECF No. of the document in which the issue was raised (i.e., ECF Nos. 157, 158, 159, 163, 176, 178, or 179), (2) the exact page number on which the issue was raised, and (3) a quotation that consists of 25 words or less from the

specified page and that sets forth the missed issue.  In no event

may Hernandez include in his written submission anything other

than the above-enumerated three items for each issue he says the

court overlooks.  Any argument not so identified will be deemed

to be waived.  The Clerk of Court is directed not to enter

judgment unless July 25, 2011, passes without either (1) an

identification by Hernandez that the court missed issues or

(2) this court otherwise instructs.

If, after judgment has been entered, Hernandez seeks

reconsideration of or modification to this order or any judgment

pursuant to Rule 59(e) or Rule 60(b) of the Federal Rules of

Civil Procedure, any such motion shall be no longer than either

30 pages or 9,000 words.  The court will strike anything

exceeding 9,000 words.  That word count includes headings and

footnotes.  Any reconsideration motion has no bearing on the

deadline of July 25, 2011, for identifying issues raised in the

§ 2255 petition that this court has not determined, as the July

25 deadline precedes the entry of judgment, and it is the entry

of judgment that starts the time running on a reconsideration

motion or an appeal.


        IT IS SO ORDERED.

        DATED: Honolulu, Hawaii, June 29, 2011.



                            /s/ Susan Oki Mollway
                            Susan Oki Mollway
                            Chief United States District Judge

U.S. v. Hernandez, Cr. No. 05-000196 SOM; Civ. No. 10-00674 SOM/KSC; ORDER DENYING
TODD ANTHONY HERNANDEZ'S PETITION FOR RELIEF UNDER 28 U.S.C. § 2255, ECF NO. 157;
ORDER DENYING AS MOOT HERNANDEZ'S MOTION TO AMEND PETITION, ECF NO. 178; ORDER DENYING
HERNANDEZ'S 1) REQUEST THAT THIS COURT INVESTIGATE WHY A DOCUMENT WAS NOT FILED,
2) MOTION TO COMPEL HIS OWN COUNSEL TO RELEASE DOCUMENTS; AND 3) MOTION FOR EXTENSION
OF TIME TO FILE HIS REPLY BRIEF, ECF NO. 179