IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00196-SOM |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANT TODD |
| | ) | ANTHONY HERNANDEZ'S MOTION |
| | ) | FOR COMPASSIONATE RELEASE |
| | ) | |
| vs. | ) | |
| | ) | |
| TODD ANTHONY HERNANDEZ, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT TODD ANTHONY HERNANDEZ'S
MOTION FOR COMPASSIONATE RELEASE**

**I.      INTRODUCTION.**

In 2005, a jury found Defendant Todd Anthony Hernandez guilty of two counts involving the distribution of large quantities of methamphetamine. This court imposed an enhanced sentence of 262 months in prison, to be followed by 10 years of supervised release. After the sentencing guidelines were amended, the court reduced the prison term to 240 months pursuant to 18 U.S.C. § 3582(c)(2). ECF No. 238. Now housed at FCI Terminal Island, Hernandez has served a little more than 15 years of that sentence, and his projected release date is May 28, 2022. He moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A).

Hernandez's request is based on the COVID-19 pandemic. He contends that an underlying medical condition (obesity) and his age (59) make him vulnerable to complications if, having

recovered from COVID-19, he contracts COVID-19 again.

FCI Terminal Island had a serious outbreak of COVID-19 in April. During the outbreak, Hernandez tested positive for COVID-19, but he did not suffer any of the serious complications associated with the virus. Now, several months later, it is unclear whether Hernandez is likely to suffer such complications in the future. The court cannot determine with certainty whether he might be reinfected or might now have some form of immunity from the virus. This court balances all of the circumstances in this case and concludes that Hernandez has established extraordinary and compelling reasons that warrant a reduction in his sentence. His motion is granted.

**II.       ANALYSIS.**

Hernandez's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . .

> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request; (2) also find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements. *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

> **A. Hernandez has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A).**

Hernandez submitted an administrative compassionate release request to the warden of his prison more than 30 days before filing this motion. *See* ECF No. 249, PageID # 3540. He has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A). The Government is not contesting Hernandez's satisfaction of the exhaustion requirement. *Id.*

> **B. Hernandez has demonstrated that extraordinary and compelling circumstances justify his early release.**

This court turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant a sentence reduction. In orders addressing compassionate release

3

motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release. This court has also stated that, in reading § 3582(c)(1)(A) as providing for considerable judicial discretion, the court is well aware of the absence of an amended policy statement from the Sentencing Commission reflecting the discretion now given to courts under that statute.  *See United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020).

The CDC currently lists the following conditions as creating an increased risk of a severe illness from COVID-19:

> *Cancer
>
> *Chronic kidney disease
>
> *COPD (chronic obstructive pulmonary disease)
>
> *Immunocompromised state (weakened immune system) from solid organ transplant
>
> *Obesity (body mass index [BMI] of 30 or higher)
>
> *Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies
>
> *Sickle cell disease
>
> *Type 2 diabetes mellitus

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/

people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited August 28, 2020).

The CDC also lists the following as possibly increasing the risk of a severe illness from COVID-19:

*Asthma (moderate-to-severe)

*Cerebrovascular disease (affects blood vessels and blood supply to the brain)

*Cystic fibrosis

*Hypertension or high blood pressure

*Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines

*Neurologic conditions, such as dementia

*Liver disease

*Pregnancy

*Pulmonary fibrosis (having damaged or scarred lung tissues)

*Smoking

*Thalassemia (a type of blood disorder)

*Type 1 diabetes mellitus

*Id.*

Under the CDC's guidance, Hernandez's obesity places him at risk of a severe illness if he contracts COVID-19. That risk is increased by his age. Hernandez is nearly 60, and according to the CDC, "[a]s you get older, your risk for severe

5

illness from COVID-19 increases." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Aug. 31, 2020).

Hernandez is housed at FCI Terminal Island. Early in the COVID-19 pandemic, the virus spread rapidly through the prison. Because the parties offered conflicting accounts of the prison's present conditions, this court deferred ruling on this motion until it could review an expert report by Dr. Michael Rowe summarizing the current state of the outbreak at Terminal Island in *Wilson v. Ponce*, No. CV. 20-4451 (C.D. Cal.). Dr. Rowe filed that report on August 24, 2020.

Two of Dr. Rowe's conclusions are particularly important. On the one hand, Dr. Rowe determined that "there is almost no active virus in the institution[.]" ECF No. 262, PageID #3733. Dr. Rowe noted that two inmates still had COVID-19, and they were in quarantine. *Id*. Of those two inmates, one "is probably not even infectious, and the other will likely have met release criteria by the date of submission of this report." *Id*. But "the possibility for a devastating return of the outbreak remains." *Id*. Even though FCI Terminal Island has "instituted many appropriate practices, and, overall, is complying with the most current CDC recommendations for correctional facilities," all prisons face unique challenges in responding to the coronavirus. *Id*. "Correctional institutions

are, intrinsically, not designed to provide adequate social distancing." *Id.* at 3726. The risks of a second outbreak are further heightened because prison officials are not in total compliance with measures designed to prevent COVID-19 from re-entering the prison or once again spreading. *Id.* at 3775-87.

In sum, while Hernandez might not be in immediate danger of being reinfected, the possibility that he will be exposed to the virus again in the future cannot be ignored. Under those circumstances, this court is not deeming Hernandez's susceptibility to COVID-19, standing alone, as an exceptional and compelling reason that warrants a reduction in sentence. This court must examine the other relevant considerations before reaching a conclusion about how to rule.

One factor this court considers is Hernandez's previous exposure to COVID-19. Hernandez was tested for COVID-19 on May 6, 2020, and the test came back positive on May 7, 2020. ECF No. 252, PageID # 3602. That raises two issues. First, while there is evidence that Hernandez suffered some complications from the coronavirus, *see id.* at 3581, it appears that Hernandez survived the virus without exhibiting any of the worst symptoms associated with COVID-19.

Second, Hernandez may have some immunity against future infection. Individuals infected by certain other viruses have at least some immunity, although the strength and length of that

immunity may vary. This court is acutely aware that no one completely understands how the coronavirus operates. Evidence suggests that COVID-19 antibodies decline over time. Some experts, however, have indicated that individuals infected with COVID-19 are likely to remain immune even after their antibody count drops. As one article put it, "[a] decline in antibodies is normal after a few weeks, and people are protected from the coronavirus in other ways." Apoorva Mandavilli, *Can You Get COVID-19 Again? It's Very Unlikely, Experts Say*, N.Y. Times, July 22, 2020, https://www.nytimes.com/2020/07/22/health/covid-antibodies-herd-immunity.html; *see also* Martin Finucane, *Here's What You Need To Know About Fading Coronavirus Antibodies*, Boston Globe, July 23, 2020, https://www.bostonglobe.com/2020/07/23/nation/heres-what-you-need-know-about-fading-coronavirus-antibodies/; Derek Thompson, *How Long Does COVID-19 Immunity Last?,* The Atlantic, July 20, 2020, https://www.theatlantic.com/ideas/archive/2020/07/could-covid-19-immunity-really-disappear-months/614377/. Even after COVID-19 antibodies decline, the body might retain immunological memory that allows it to quickly produce new antibodies to respond to a second infection. *See* Finucane. Some experts have therefore posited that, at the very least, it is highly unlikely that individuals will contract the coronavirus twice. *See id*.

More recently, researchers reported that "[a] Hong Kong

man who was initially infected with the coronavirus in March and made a full recovery was reinfected more than four months later after a trip abroad." Adam Taylor and Ariana Eunjung Cha, *First Coronavirus Reinfection Documented in Hong Kong, Researchers Say*, Washington Post, August 24, 2020, https://www.washingtonpost.com/health/2020/08/24/coronavirus-reinfection-hong-kong/. Shortly after that, "researchers in the United States [reported] their first documented case of a patient who got COVID, recovered and then got it again[.]" Nate Wood, *Nevada lab confirms 1st coronavirus reinfection in the US*, ABC News, Aug. 28, 2020, https://abcnews.go.com/Health/nevada-lab-confirms-1st-coronavirus-reinfection-us/story?id=72691353. Nevertheless, "[s]cientists [still] say that although reinfection is likely possible, it's also extremely rare." *Id.* Notably, these are the "the first documented reinfection[s] among nearly 6 million COVID-19 cases to date." *Id*.

This court is in no position to make a definitive determination about immunity. But, in any evaluation of whether there are extraordinary and compelling reasons warranting a reduction in his sentence, this court can no more ignore the possibility of immunity than it can ignore the possibility of reinfection.

The court also considers the time remaining on Hernandez's sentence. Hernandez has already served more than 15

9

years of his sentence, and his projected release date is May 28, 2022, less than two years from now.  Thus, as the Government recognizes, "it can be fairly said . . . that [Hernandez] has served approximately 90% of the total time that he will eventually serve, if this motion is denied."  ECF No. 253, PageID # 3609.

Finally, the court considers Hernandez's history.  Hernandez's crime was serious.  He was convicted of organizing the distribution of large quantities on methamphetamine in Hawaii.  In 1990, Hernandez was also convicted of a crime involving the possession of more than 50 grams of marijuana, and, in 1995, he pled guilty to a charge of carrying a concealed weapon.  He is therefore a repeat offender.  On the other hand, there is no dispute that Hernandez "appears to have performed well while incarcerated."  ECF No. 253, PageID # 3621.  He has only been disciplined once, for "failing to stand count."  That incident occurred in 2005, while he was in pretrial detention.  ECF No. 249-7, PageID # 3561.  He has not been disciplined again in more than 15 years.  While in prison, he earned his GED, and he has also taken welding classes to prepare for his release.[1]

---

[1] If released, Hernandez plans to live in his mother's home in Carson, California.  ECF No. 249-1, PageID # 3548.  He will have his own room, and he has indicated that he will practice social distancing.  *Id.*  He was previously employed as a longshoreman, and his brother has already contacted his previous employer about rehiring him if this court grants his motion.  *Id.*

ECF No. 249-8, PageID # 3563.  Hernandez's conduct in prison also suggests that he will not pose a danger to the safety of any other person or the community if he is released.  Consequently, Hernandez's release appears consistent with the guidelines promulgated by the Sentencing Commission.  *See* U.S.S.G. § 1B1.13 (stating that an inmate should not be released unless he or she "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)").

Also reassuring to this court is the 10-year supervised release period Hernandez faces.  If Hernandez reoffends during that period, the court will be able to react appropriately to protect the public.

This is a close case.  Hernandez has nearly completed his sentence for a serious crime that merited a lengthy prison sentence.  His age and medical condition make him susceptible to complications from the virus, although, when infected in the past, he suffered a relatively mild case of COVID-19.  He may now have some form of immunity.  With difficulty, this court has balanced the seriousness of Hernandez's crime, the amount of time remaining on his prison sentence, the supervised release term he faces, the medical information he has submitted (including his earlier positive test), his age, his conduct while incarcerated, and the conditions at his facility.  The court has taken its time on this decision precisely because of the difficulty of balancing

the competing factors.  Ultimately, the court is most influenced by the length of time Hernandez has already served in custody, by his apparently good conduct for the past 15 years in custody, and by the length of the supervised release term he must serve. Taken together with the other circumstances favoring release, those factors lead this court to conclude that Hernandez has established extraordinary and compelling reasons warranting a reduction in his sentence, and that his early release is consistent with the Sentencing Commission's policy statements.

**III.     CONCLUSION.**

Hernandez's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is granted.[2]

Hernandez's sentence is reduced to time served plus 3 days.  (In other cases in which the court has granted supervised release, the court has reduced original sentences to time served plus 15 days, but, given Hernandez's prior infection with the coronavirus, the court thinks 3 days will suffice here.)  The 3-day period is intended to allow his family to make arrangements to transport him home from FCI Terminal Island and to remove guns from the residence.  Following the 3 days, Hernandez shall be

---

[2] In his initial motion, Hernandez asked this court to recommend to the Bureau of Prisons that he be placed in home confinement under 18 U.S.C. §§ 3621 and 3624, although he did not pursue that argument in any of his subsequent filings.  This court deems this request to be moot in light of the present order.

released to begin his term of supervised release.

Hernandez faces a 10-year term of supervised release, and that term is substantial enough that the court orders no supplemental period of supervised release.

As he proposed, Hernandez must go directly from FCI Terminal Island to his mother's residence in Carson, California. That is, Hernandez must travel from FCI Terminal Island to his mother's home without stops and without leaving the vehicle, except as may be absolutely necessary.

Hernandez shall abide by all of the standard, mandatory, and special conditions of supervised release previously imposed, including the ban on firearms. In addition, Hernandez must abide by the following additional special conditions:

> 4. You will be monitored by radio frequency technology for a period of 180 days, and you must follow the rules and regulations of the location monitoring program, pursuant to the Participant's Agreement. You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities as pre-approved by the probation officer. You shall earn leave as determined by the probation officer. You must pay the costs of the program, as directed by the probation officer.

It is further ordered that, immediately upon his release from BOP custody, Hernandez report by telephone

(808-541-1283) to Timothy Jenkins of the United States Probation Office, District of Hawaii.  Mr. Jenkins's office will be contacting the United States Probation Office, Central District of California, concerning supervision of Mr. Hernandez.

It is so ordered.

DATED: Honolulu, Hawaii, September 14, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Hernandez*, CR. No. 05-00196-SOM; ORDER GRANTING DEFENDANT TODD ANTHONY HERNANDEZ'S MOTION FOR COMPASSIONATE RELEASE